IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KENYON BRADY CLARK,<br><br>                  Plaintiff,<br>v.<br><br>CACHE VALLEY ELECTRIC COMPANY, a<br>Utah corporation,<br>                  Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:11-cv-00461-DN<br><br>District Judge David Nuffer |

Defendant Cache Valley Electric Company ("CVE") has filed a motion for summary judgment[1] requesting dismissal of Plaintiff Kenyon Brady Clark's ("Clark") complaint.[2]  Clark alleges that CVE discriminated against him on the basis of sex in violation of Title VII, and that Clark's termination by CVE was retaliation for Clark's opposition to the alleged discrimination.[3] Additionally, Clark's complaint also alleges a claim of hostile work environment in violation of Title VII, but the parties stipulated to dismiss this cause of action with prejudice.[4]

## STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  In applying this standard, the Court must view facts "in the light most favorable to the nonmoving

---

[1] Defendant Cache Valley Electric Company's Motion for Summary Judgment and Memorandum in Support (Supporting Memo), docket no. 35, filed March 15, 2013.

[2] Complaint, docket no. 2, filed May 23, 2011.

[3] *Id.* at 8, 10-11.

[4] Order Granting Stipulated Motion to Dismiss Plaintiff's Second Cause of Action with Prejudice, docket no. 34, filed March 15, 2013.

[5] Fed. R. Civ. P. 56(a).

party."[6]  The opponent, however, "must do more than simply show that there is some metaphysical doubt as to the material facts,"[7] and where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[8]

## UNDISPUTED MATERIAL FACTS

The following material facts are mostly undisputed in the briefing, but where facts offered by CVE were disputed in Clark's response, those disputes have been removed by editing and the undisputed portions remain.

1.　　Clark is a former project manager in the Teledata division at CVE.[9]

2.　　Myron Perschon was Plaintiff's supervisor at CVE.[10]

3.　　Melissa Silver was also a project manager in the Teledata division at CVE, and was also supervised by Mr. Perschon.[11]

4.　　In addition to her position as a project manager, Ms. Silver was an operations manager in the Teledata division and performed job duties as an operations manager in addition to her duties as a project manager.[12]

5.　　Clark has alleged that Mr. Perschon and Ms. Silver were engaged in a relationship of a sexual or romantic nature.[13]

---

[6] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[7] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[8] *Id.* at 587.

[9] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Opposition) at 4, docket no. 39, filed April 26, 2013.

[10] *Id*.

[11] *Id*.

[12] *Id*.

[13] *Id*. at 5.  Clark attempts to dispute this fact, however, Clark's complaint is replete with allegations and references to an alleged sexual or romantic relationship between Mr. Perschon and Ms. Silver.  *See* Complaint ¶¶ 14-16, 20-21.

6.      Clark has alleged that Ms. Silver received favored treatment from Mr. Perschon because of the alleged consensual romantic relationship between Mr. Perschon and Ms. Silver.[14]

7.      The first member of the Teledata division to complain of the alleged favored treatment of Ms. Silver by Mr. Perschon was April Taylor, a female employee.[15]

8.      Clark has not specifically alleged, or provided any evidence that Mr. Perschon provided favored treatment to any other female employee besides Ms. Silver.[16]

9.      The basis for Clark's subjective belief that Mr. Perschon and Ms. Silver engaged in a romantic relationship is unsubstantiated rumors, gossip and innuendo perpetuated by his colleagues.[17]

10.     Ms. Silver's compensation, including bonuses, was not based on the same formula as the other project managers because of her additional duties as an operational manager.[18]

11.     On November 10, 2010, Clark submitted an email to Stacy Atkinson, CVE's Personnel Manager, and Jim Laub, CVE's CEO, complaining of a hostile work environment and harassment based on the relationship between Mr. Perschon and Ms. Silver.[19]

---

[14] *Id*. at 6. Clark attempts to dispute this fact. However, Clark testified at his own deposition that he was convinced Ms. Silver was receiving favorable treatment as a result of the sexual relationship between her and Mr. Perschon. (Deposition of Kenyon Brady Clark at 76, Appendix, docket no. 36, filed March 18, 2013).

[15] Opposition at 7. Clark attempts to dispute this fact by arguing that another male employee, Dan Poulton, was the first person to complain of favorable treatment. The record indicates, however, that Mr. Poulton did not raise the issue of favoritism, but only mentioned what he had heard from others that Mr. Perschon and Ms. Silver were engaging in a romantic or sexual relationship. (Deposition of Nathan Wickizer at 65-66, Appendix, docket no. 36, filed March 18, 2013).

[16] Opposition at 8.

[17] *Id.* at 9. Although Clark claims to dispute this fact, his response does not dispute the substance of this fact.

[18] Opposition at 10. Clark attempts to dispute this fact, but in his explanation admits that Division Managers have discretion in awarding bonuses, and that Mr. Perschon awarded Ms. Silver additional compensation based on her additional administrative assistant functions.

[19] Opposition at 14. This fact has been edited to remove Clark's dispute about the nature of relationship referred to in the email.

12.     On November 11, 2010, Ms. Atkinson interviewed Clark regarding the allegations in his November 10, 2010 email.[20]

13.     Ms. Atkinson testified that during her interview with Clark on November 11, 2010, he told her that the only acceptable solution to his complaints in the email was to either demote or terminate Mr. Perschon.[21]

14.     Plaintiff's employment with CVE was terminated on November 12, 2010.[22]

15.     Nathan Wickizer, CVE's COO, and Ms. Atkinson both testified that one of the reasons Plaintiff was terminated was insubordination.[23]

## DISCUSSION

## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

Title VII prohibits an employer from failing or refusing to "hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[24]  The Tenth Circuit defines Title VII's reference to sex as "a class delineated by gender, rather than sexual affiliations."[25]  The Tenth Circuit's decision in *Taken v. Oklahoma Corporation Commission*[26] is instructive in the present case.  In *Taken*, the plaintiffs

---

[20] Opposition at 14.

[21] *Id.* at 15.  Clark attempts to dispute this fact, but this is Ms. Atkinson's testimony. (Deposition of Stacy Atkinson at 54-55, Appendix, docket no. 36, filed March 18, 2013 ).  The underlying fact is not proffered as undisputed, only that Ms. Atkinson testified to what Clark told her.

[22] Supporting Memo ¶ 37 at 8.

[23] Supporting Memo ¶ 38 at 8.  This fact has been edited to incorporate Clark's assertion that he had been terminated for multiple reasons, not solely for insubordination.

[24] 42 U.S.C. § 2000e-2(a)(1) (2012).

[25] *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997).

[26] 125 F.3d 1366 (10th Cir. 1997).

brought claims of race and sex discrimination under Title VII against their employer after the plaintiffs were not selected for a promotion.[27] The individual who made the promotion decision awarded the promotion to a man with whom she was romantically involved, despite the man being less qualified.[28] In addressing the plaintiffs' sex discrimination claim, the Tenth Circuit held that the plaintiffs did not state a claim for relief under Title VII, because the allegations were "based on a voluntary romantic affiliation, and not on any gender differences."[29] The court went on to note that "[f]avoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification."[30] The court declined "to extend Title VII to include consensual romantic involvements."[31]

Similar to *Taken*, Clark's claim of sex discrimination is based on allegations in the complaint that he was receiving unfair treatment as a result of a relationship between his supervisor, Mr. Perschon, and a fellow employee, Ms. Silver.[32] Additionally, in his deposition, Clark acknowledged his belief that Ms. Silver was receiving favorable treatment from Mr. Perschon.[33] In Clark's opposition, however, Clark attempts to abandon the basis of his claim and argue that *Taken* does not apply because there is no evidence Mr. Perschon and Ms. Silver were ever engaged in a sexual or romantic relationship.[34] Clark's attempt to disavow the basis for his argument and this lawsuit is unavailing. Clark argues that *Taken* requires the existence of an

---

[27] *Taken*, 125 F.3d at 1368.

[28] *Id.*

[29] *Id.* at 1370.

[30] *Id.*

[31] *Id.*

[32] *See* Complaint ¶¶ 14, 21, 23 at 3-4.

[33] Deposition of Kenyon Brady Clark at 76.

[34] Supporting Memo at 28-29.

actual relationship in order to apply the holding,[35] but that proposition is not stated in the case. *Taken* only refers to allegations "based on a voluntary romantic affiliation,"[36] and does not require that the plaintiff show the existence of an actual relationship. Clark's sex discrimination claim is based on allegations of a "voluntary romantic affiliation,"[37] and thus Clark has failed to state a claim for relief under Title VII.

Furthermore, Clark alleges in his complaint that Mr. Perschon showed general favoritism toward "females for whom he supervised."[38] Clark acknowledges in his opposition, however, that he has not alleged, or provided any evidence that Mr. Perschon provided favored treatment to any other female employee besides Ms. Silver.[39] This undisputed fact weakens Clark's argument that he suffered discrimination based on his sex, because he cannot show that Mr. Perschon favored women over men. Additionally, the first member of the Teledata division to complain of the alleged favored treatment of Ms. Silver by Mr. Perschon was April Taylor, a female employee.[40] This fact supports the gender neutral nature of Clark's claim is, because Clark is "in the same position as all men and all other women."[41] Clark has provided no persuasive evidence that Mr. Perschon discriminated against any individual based on sex.

---

[35] Supporting Memo at 29.

[36] *Taken*, 125 F.3d at 1370.

[37] *Id.*

[38] Complaint ¶ 14 at 3.

[39] *See* Undisputed Material Fact #8, *supra* p. 3.

[40] *See* Undisputed Material Fact #7, *supra* p. 3.

[41] *Taken*, 125 F.3d at 1370.

## RETALIATION IN VIOLATION OF TITLE VII

Clark alleges that his termination from CVE was retaliation for engaging in opposition to unlawful discrimination.[42] Specifically, Clark alleges that he was terminated because he complained to CVE's senior managers about Mr. Perschon's alleged discriminatory behavior.[43] In order to establish a prima facie case of retaliation, Clark must demonstrate that: "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[44] CVE argues that Clark has not demonstrated the first element in establishing a prima facie case of retaliation.[45] Even if it is assumed that Clark has established a prima facie case of retaliation under Title VII, Clark cannot meet his burden according to the burden shifting analysis.

> After the plaintiff establishes a prima facie case of retaliation,
>
> the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. If the employer satisfies this burden of production, then, in order to prevail on [his] retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action "is pretextual, i.e., unworthy of belief."[46]

Nathan Wickizer, CVE's COO, and Stacy Atkinson, CVE's personnel manager, both testified that Clark's termination was a result of insubordination. Specifically, Clark's termination resulted from his inability or unwillingness to work with his supervisor Mr. Perschon.[47] Testimony from both Mr. Wickizer and Ms. Atkinson satisfy CVE's burden to articulate a

---

[42] Complaint ¶¶ 66-67 at 10.

[43] *Id*.

[44] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001).

[45] Supporting Memo at 15-16.

[46] *Selenke v. Med. Imagaing of Colo.,* 248 F.3d 1249, 1264 (10th Cir. 2001) (quoting *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1177 (10th Cir. 1999)).

[47] *See* Deposition of Nathan Wickizer at 27-28; Deposition of Stacy Atkinson at 54-55. (first cited at 21 now)

nondiscriminatory reason for terminating Clark.  Because CVE has met its burden, the burden

shifts to Clark, and he must prove that CVE's articulated reason for termination is pretextual.

Pretext can be demonstrated by "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that

a reasonable factfinder could rationally find them unworthy of credence and hence infer that the

employer did not act for the asserted non-discriminatory reasons."[48]  Clark argues, relying on

*Metzler v. Federal Home Loan Bank of Topeka*,[49] the "close temporal proximity between Clark's

complaint and his termination (less than two days), combined with the implausibility of CVE's

purported reason for immediate discharge, support a finding of pretext . . . ."[50]

In *Metzler*, an employee was terminated and brought claims against her employer for

unlawful termination under the Family and Medical Leave Act ("FMLA").[51]  Metzler alleged

interference with her FMLA-created rights, and retaliation for exercising her rights under the

FMLA.[52]  The court observed that it has "refused to allow even very close temporal proximity to

operate as a proxy for [the] evidentiary requirement that the plaintiff demonstrate pretext."[53]

Furthermore, "[t]o raise a fact issue of pretext, [the plaintiff] must . . . present evidence of

temporal proximity *plus* circumstantial evidence of retaliatory motive."[54]  In addition to the

temporal proximity evidence, Metzler relied on five other pieces of circumstantial evidence to

---

[48] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996) (internal quotation marks omitted).

[49] 464 F.3d 1164 (10th Cir. 2006).

[50] Opposition at 40.

[51] 29 U.S.C. §§ 2601-54.

[52] *Metzler*, 464 F.3d at 1166.

[53] *Id.* at 1172 (quoting *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004) (internal quotation marks omitted)).

[54] *Metzler*, 464 F.3d at 1172.

demonstrate pretext.[55]  The court, however, still held that Metzler failed to demonstrate her

employer's termination reasons were "so weak, implausible, inconsistent, incoherent, or

contradictory as to support a reasonable inference that [the employer] did not act for those

reasons."[56]

In addition to the temporal proximity argument, Clark argues that his termination was

pretextual because of supporting circumstantial evidence.  Clark alleges pretext, because he

"worked for CVE for twelve years, had no prior disciplinary history, received no prior warning

from anyone about insubordination and was never given the ability to dispute or otherwise

defend himself against the allegation of insubordination."[57]  Clark's allegations, which have no

citations to any evidence in the record, are not persuasive.  Clark has failed to demonstrate that

CVE's reason for terminating him is so"weak, implausible, inconsistent, incoherent, or

contradictory as to support a reasonable inference that [CVE] did not act for [the reason

stated]."[58]  Consequently, Clark has failed to meet his burden to demonstrate pretext.

---

[55] *Id.*

[56] *Id*. at 1179.

[57] Opposition at 40-41.

[58] *Metzler*, 464 F.3d at 1179.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that CVE's motion for summary judgment[59] on all claims is GRANTED.  The August 15, 2013 motion hearing[60] is VACATED. The clerk shall close the case.

Signed July 22, 2013.

BY THE COURT

District Judge David Nuffer

---

[59] Docket no. 35, filed March 15, 2013.

[60] Docket no. 46, filed May 30, 2013.